EDWARD M. PATTEN *versus* OLIVER MOSES *& al.*

The owner of a promissory note may maintain an action thereon in the name of a third person, by his consent.

An indorsement of a promissory note payable to an insurance company, by one who has been their president, and who acts as such in making the indorsement, passes the title to the indorsee, especially when the company receives and converts to its use the avails of the note.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

ASSUMPSIT upon a promissory note, dated Nov. 1, 1855, payable to the Commercial Mutual Marine Insurance Company or their order, in fourteen months from its date.

The testimony tended to show that the plaintiff was not the owner of the note; that the Traders' Bank were the holders of the note, claiming to be the owners of it; that their attorney called upon the plaintiff and obtained his permission to bring the suit in his name; that the Traders' Bank were prosecuting the suit; that George H. Folger was President of the company for three years previous to April, 1856, and frequently drew checks, signed and indorsed notes for the company, in the name and as President of the company; that he resigned in April, 1856, and no successor was chosen; that, in August, 1856, he indorsed this note, as President of the company, to the Traders' Bank, by whom it was discounted; and that the company received and used the avails of the note.

*E. & F. Fox*, for plaintiff.

*Evans & Putnam*, for defendant.

1. The suit is not maintainable in Patten's name, though he consented to the bringing of it.

There is no evidence whatever that the Traders' Bank have authorized the use of Patten's name. This is fatal. *Bragg* v. *Greenleaf*, 14 Maine, 395; *Fisher* v. *Bradford*, 7 Maine, 28; *Golder* v. *Foss*, 43 Maine, 366.

Plaintiff's attorneys have no authority, as such, to bring suit in any other than client's name.

If, as defendant contends, the note is still the property of the original payees, the insurance company, the objection would be equally strong, they never having authorized suit in anybody's name.

2. The property in the note is still in the insurance company, never having been duly and legally transferred.

Folger was not the President of the company, and had no authority to transfer the note, or indorse it at the time he assumed to do so. He ceased to be President, April 23, 1856. The note was transferred in September following. Nor is there any evidence that after his resignation he *acted* as President in any thing, except in the transfer of this note.

The insurance company had ceased taking risks or paying losses at the time of his resignation. They never held him out to the public afterwards as having any authority to bind them.

Not being what he assumed to be, the burden is on plaintiff to show that he was so recognized and permitted to act by the company as to bind it.

The proof is insufficient for that purpose.

There were no such *"notorious"* acts as is spoken of in *Bank* v. *Dandridge*, 12 Wheat., 64; nor such *"recognition"* by the board of directors of authority. See also Angell & Ames on Corporations, § 287; *Canal Bridge* v. *Gordon*, 1 Pick., 304; *Sampson* v. *Steam Mill Co.*, 36 Maine, 80; *Pen. & Ken. R. R. Co.* v. *Dunn*, 39 Maine, 599.

None of the cases bearing upon the question present so loose and unsatisfactory grounds of presumption as does this. In most of them the *positive proof* existing here, that the acting officer was *not* what he pretended, was wanting. *Lovett v. German Reformed Church*, 12 Barb., 68; *Melledge* v. *Boston Iron Works*, 5 Cush., 179.

The opinion of the Court was drawn up by

GOODENOW, J.—In *Cabot* v. *Given*, 45 Maine, 144, it was decided that, in a suit by an *indorsee* against the *maker* of a promissory note, payable to an insurance company, and indorsed and transferred for the company by the President, parol evidence that he was acting President at the time of the indorsement, is admissible, and sufficient, without producing the records of the company; and that proof of the handwriting of such President, is sufficient evidence of the indorsement and transfer of the note, without evidence that he had *special authority* for that purpose.

In a note to *Miller* v. *Race*, 1 Smith's Leading Cases, 609, it is stated, that "it appears to be settled in the American cases, that the holder of a negotiable note is, *prima facie*, entitled to recover, upon merely producing the note; but that if the *defendant* prove the note was fraudulent in its

inception, or fraudulently put in circulation, or stolen, or lost, or obtained by duress, there is thrown upon the plaintiff the burden of proving that he is a holder *bona fide*, or for a valuable consideration."

The note in suit is dated Nov. 1, 1855, on fourteen months, signed by the defendants, and payable to the Com. Mutual M. Ins. Co., or order, for the sum of $321. And indorsed, "waiving right of demand and notice.

> "Com. M. M. Ins. Co., by
>
> "George H. Folger, President."

The deposition of Frederic S. Davis shows that it was discounted by Traders' Bank, Boston, August 30, 1856, for the office.

From the deposition of Harvey Jewell, it appears that, on April 23, 1856, George H. Folger resigned his situation as President, but that he continued as one of the directors of the company, until May 5, 1857, when he resigned as director. The deposition of George H. Folger shows that he was a director during the years 1855 and 1856, and was President up to about the first of May, 1856, and *ex officio* Treasurer. That the note was indorsed by him to raise money at the Traders' Bank, *for the company*, and that, in behalf of the company, he actually received the amount of the note, *less* the discount. That the company ceased paying losses about April, 1856 ; and that no one acted as President after him ; that the finance committee authorized the discounts ; that the negotiations of the paper were made by the President and sanctioned by the financial committee.

Folger was President in 1855, and was reëlected on the first Monday of April, 1856, and resigned the office the 23d of the same month, but continued as director until May, 1857.

But it is alleged that Folger indorsed the note after he resigned the office of President ; and this is proved. But it is not proved, as alleged, that the plaintiff in fact, or the plaintiffs in interest, had any knowledge of such resignation. It may well be inferred that they had not. As prudent

men, if they had knowledge of that fact, they would, probably, have declined to take the paper upon his indorsement as President. He had been President in 1855, had been recently reëlected, was a director, and held himself out as President, with the knowledge of other directors and of the financial committee. Why should not strangers be justified in trusting him and negotiating with him, as President? It is like the case of a partner in a firm; he may bind the *firm* after a dissolution of the partnership, and before notice of the dissolution, express or implied.

The insurance company have placed Folger in a situation to impose upon the plaintiffs, and they should be estopped to deny his authority to indorse the note, especially after having received the avails of it. The defendants will be safe against any future claim, by any other plaintiffs, when they have once paid the note to the present plaintiff, or had judgment against them in this case.

It is certainly reasonable that losses, resulting from the unfaithfulness of an agent, should be borne by the principal whose misplaced confidence has afforded the means of producing them, rather than by strangers, acting fairly in the ordinary course of business. 2 Story on Eq., § 1258. But here there is no loss.

> *A default must be entered and judgment for*
> *plaintiff for the amount of the note and costs.*

DAVIS, J.—The defendants, in argument, pressed mainly the *first point*, relying upon *Bragg* v. *Greenleaf*, 14 Maine, 395. But in that case the *owner* of the note did *not bring the suit*, or *order* it brought. The suit was brought by a nominal plaintiff, who had no interest in it.

Here the *suit was brought* by *express direction* of the Traders' Bank, *the owners*, and is carried on by them,—Patten consenting to the use of his name, but taking no interest in the suit.

In regard to the *transfer* of the note, while it might not bind the insurance company upon the contract as *indorsers*,

it was sufficient to *pass the property* to the Bank. The insurance company are estopped by the acts of their officers from claiming the note. I concur in the opinion that judgment must be entered for the plaintiff.

TENNEY, C. J.; APPLETON, CUTTING and MAY, JJ., concurred in the result.